**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**NATHANIEL GRIFFIN,**

      Plaintiff,

v.                                                                    Case No. 8:25-cv-02787-WFJ-CPT

**CITY OF SOUTH PASADENA,**
and **THE ST. PETERSBURG**
**INTERNATIONAL ASSOCIATION OF**
**FIRE FIGHTERS, LOCAL 747**,

      Defendants.

_____/

## <u>ORDER</u>

Before the Court are Defendants City of South Pasadena (the "City") and the

St. Petersburg International Association of Fire Fighters, Local 747's ("Local 747")

Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and request

to strike duplicative claim in the Complaint. Dkts. 30, 31. The City moves this Court

to dismiss Counts I–VIII of the Complaint and strike Count IV. Dkt. 30. Local 747

moves to dismiss the single count alleged against it in Count IX. Dkt. 31. Plaintiff

Griffin has responded in opposition, Dkt. 32, and Defendants replied. Dkts. 33, 34.

After careful consideration, the Court grants the City's motion to dismiss Counts I–

VIII and grants Local 747's motion to dismiss Count IX.

## BACKGROUND

This employment dispute centers around Plaintiff Griffin's termination from the South Pasadena Fire Department due to the alleged manipulation of his annual physical evaluation, which all South Pasadena Fire Department employees must undergo pursuant to the Collective Bargaining Agreement ("CBA") between Local 747 and the City.

On or about June 8, 2018, Plaintiff was hired by the City to be a "firefighter/paramedic." Dkt. 5 ¶ 13. The following year, on August 28, 2019, the City and Local 747 finalized a CBA that applied to all South Pasadena Fire Department employees. *Id.* ¶ 15; *see* Dkt. 31-1 (showing CBA between the City and Local 747).[1] Under Article 6 of the CBA, all South Pasadena Fire Department employees are subject to annual physical examinations "to determine whether or not the employee is fit for duty." Dkt. 31-1 at 12; *see* Dkt. 5 ¶ 16. When evaluating the results of the physical examination, the CBA requires the physician to follow the national guidelines set forth in the National Fire Protection Association ("NFPA") 1582, Chapter 9. Dkt. 31-1 at 12. As relevant to this lawsuit, the annual physical

---

[1] Ordinarily, when ruling upon a motion to dismiss, a court considers only the "four corners of the complaint" and the exhibits attached to the complaint. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010); *see Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023). However, under the doctrine of incorporation by reference, a court may also consider a document outside the four corners if it "is central to the plaintiff's claims and is undisputed in terms of authenticity," regardless of whether it is "mentioned in" or "attached to" the complaint. *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005); *see Johnson v. City of Atlanta*, 107 F.4th 1292, 1299–1300 (11th Cir. 2024). Here, the CBA attached to Defendant Local 747's motion to dismiss is central to Plaintiff's claims, as the Complaint references the CBA multiple times in connection with his ADA, Title VII, and GINA claims, and the attachment's authenticity is not disputed by Plaintiff. Dkt. 5 ¶¶ 15, 16, 39, 40.

examination includes tuberculosis ("TB") testing, which may require an additional chest X-ray if the TB test comes back positive. *Id.* Plaintiff alleges that at some unspecified point during the CBA negotiations, he objected to the CBA agreement due "to the breath [sic] and intrusive nature of the mandatory medical examinations." Dkt. 5 ¶ 17. Plaintiff further alleges that he continually voiced his objection to the CBA, even after the agreement was adopted on August 28, 2019. *Id.* ¶¶ 15, 18, 19.

On August 12, 2022, Plaintiff underwent his annual physical examination at Life Scan Wellness Center ("Life Scan"). *Id.* ¶ 21. During his examination, Plaintiff completed most of the medical examination without issue, except for the TB test. *Id.* ¶¶ 22, 28–34. The City opened a formal investigation into Plaintiff for allegedly asking the Life Scan technician to skip the TB test but fraudulently report that a test had been done. *Id.* ¶¶ 30, 31. A hearing was held on August 29, 2022, at which Plaintiff presented testimony and answered questions about what occurred during the annual physical examination. *Id.* ¶¶ 24, 25. On September 7, 2022, Fire Chief Mixson provided Plaintiff with a "written memorandum regarding FF/Paramedic Griffin['s] Conduct and Work Performance." *Id.* ¶ 26. The memorandum stated that "a Life Scan technician informed [Fire Chief Mixson] that the Plaintiff did not want the TB test performed on him," and that Plaintiff had "asked that he receive paperwork stating he underwent the test. When told [Life Scan] would not provide such documentation, the Plaintiff underwent the test." *Id.* ¶ 30. The memorandum

concluded that "Plaintiff's behavior did not meet City standards, was insubordinate[,] and significantly undermined public trust." *Id.* ¶ 35. Plaintiff denies ever asking the Life Scan technician to lie about whether a TB test had been done. *Id.* ¶ 34.

Based on the investigation results, Fire Chief Mixson recommended terminating Plaintiff's employment. *Id.* ¶ 36. On September 13, 2022, the City asked if Plaintiff wished to resign, which Plaintiff declined. On the same day, the City terminated Plaintiff's employment. *Id.* ¶¶ 37, 38. On September 19, 2022, Plaintiff filed a grievance under the CBA, but the City refused to participate in the CBA's grievance process. *Id.* ¶¶ 39, 40. On April 24, 2023, Plaintiff filed a charge of discrimination against the City with the Florida Commission on Human Rights ("FCHR") and the Equal Employment Opportunity Commission ("EEOC"), asserting discrimination based on disability, genetic information, and sex, as well as retaliation. *Id.* ¶¶ 10, 41. Plaintiff received a Dismissal and Notice of Rights from the EEOC on July 22, 2025. *Id.* ¶ 11. Although not alleged in the Complaint, Plaintiff also filed an EEOC charge of discrimination against Local 747 on May 4, 2023, also alleging discrimination based on disability, genetic information, and sex, as well as retaliation. Dkt. 31-2 (showing EEOC charge against Local 747).[2]

---

[2] Again, the Court considers the attached EEOC charge against Local 747 under the doctrine of incorporation by reference. The EEOC charge is central to Plaintiff's single ADA claim against Local 747, and the attachment's authenticity is not disputed by Plaintiff. Dkt. 5 ¶¶ 98–102.

On October 14, 2025, Plaintiff filed the instant Complaint, bringing nine counts against Defendants. *See* Dkt. 5. Against the City, Plaintiff asserts eight counts: (1) an Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, discrimination claim; (2) ADA retaliation claim; (3) violation of the Genetic Information Nondiscrimination Act of 2008 ("GINA"); (4) retaliation under GINA; (5) sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); (6) retaliation in violation of Title VII; (7) 42 U.S.C. § 1983 claim for violations of the Fourth, Fifth, and Fourteenth Amendments; and (8) violation of the Florida Constitution's right to be free from unreasonable search and seizure. *Id.* ¶¶ 42–96. In Count IX, Plaintiff's Complaint alleges a single ADA discrimination claim against Local 747. *Id.* ¶¶ 97–102. In January 2026, Defendants filed the instant motions to dismiss and strike duplicative claims. Dkts. 30, 31.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the plaintiff is entitled to relief to give the defendant fair notice of the claims and grounds. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted). In considering a Rule 12(b)(6) motion to dismiss, the

court must construe the facts in the light most favorable to the plaintiff. *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (citation modified). However, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted).

## DISCUSSION

Based on a careful review of the pleadings, the Court grants the City's motion to dismiss. As discussed below, Plaintiff has failed to state a claim under the ADA, GINA, Title VII, and Section 1983. As to Local 747, the Court grants the motion to dismiss Count IX since Plaintiff's ADA discrimination claim is time-barred. The Court's discussion will begin with the City's motion to dismiss the eight counts against it and then consider Local 747's motion to dismiss the single ADA claim.

### I.   The City's Motion to Dismiss Counts I–VIII

#### a.  Counts I & II—ADA discrimination and retaliation claims

The City seeks dismissal of the ADA discrimination claim in Count I, primarily arguing that the annual physical examination requirement "constitutes a lawful, job-related medical examination within the meaning of the [ADA]." Dkt. 30

6

at 1. Plaintiff responds, contending that his ADA claim survives dismissal as the annual physical examination is not job-related or consistent with "business necessity." Dkt. 32 at 3. While the City might be correct that an annual physical examination for firefighters does not violate the ADA, the City's business-necessity argument is an affirmative defense under 42 U.S.C. § 12113(a), which should be raised in the City's answer. However, the Court still dismisses Count I for failure to state a claim.

In Count I, Plaintiff asserts that the City's mandatory physical examination for all South Pasadena Fire Department firefighters is an impermissible medical inquiry under the ADA. Dkt. 5 ¶ 44. The ADA provides in relevant part:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

42 U.S.C. § 12112(d)(4)(A). An individual need not be disabled to be protected under this section. *See Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1310–11 (11th Cir. 2013). Thus, to prove discrimination under this section of the ADA, a plaintiff must show the employer required a disability-related medical examination or made a disability-related medical inquiry. *See* 42 U.S.C. § 12112(d)(4)(A). If a plaintiff makes that showing, then the employer can avoid liability if it demonstrates that the examination or inquiry was "job-related and consistent with business

necessity." *See Allmond v. Akal Sec., Inc.*, 558 F.3d 1312, 1316–1317 (11th Cir. 2009) ("To benefit from the affirmative defense [in 42 U.S.C. § 12113(a)], an employer must prove that the pertinent qualification standard is job-related and consistent with business necessity."); *see also Owusu-Ansah*, 715 F.3d at 1311 (applying *Allmond*'s definitions to 42 U.S.C. § 12112(d)(4)(A)).

Here, the Complaint does not sufficiently allege a violation under 42 U.S.C. § 12112(d)(4)(A). Article 6 of the CBA requires all South Pasadena Fire Department employees to undergo an annual physical examination, and Plaintiff had an examination in August 2022. Dkt. 5 ¶¶ 16, 21–22; *see* Dkt. 31-1 at 12. However, the Complaint never specifies which aspects of Plaintiff's physical examination at Life Scan were an improper inquiry into the nature or severity of his disability or whether he is an individual with a disability. *See* 42 U.S.C. § 12112(d)(4)(A). While Plaintiff states that he "completed all available portions of the medical examination[,] which included tuberculin injection, ultrasonic imaging of the visceral organs and genitalia, medical questionnaire, vision/auditory testing[,] and physical fitness evaluation," Dkt. 5 ¶ 22, the Complaint never identifies which portions of the examination were violations of the ADA. To be sure, Plaintiff has several specific allegations concerning his refusal to get tested for TB during the examination, but he never alleges that he is a disabled individual with TB or that the tuberculin injection portion of the physical examination violated the ADA. *See id.* ¶¶ 22, 30–34. Instead, the

8

allegations in Count I vaguely state that the City's "mandatory annual medical examinations violate the Plaintiff's rights under the ADA. Specifically, the examinations violate the ADA's prohibition against medical examinations and disability- related inquiries." *Id.* ¶ 44. This assertion is nothing more than a formulaic recitation of 42 U.S.C. § 12112(d)(4)(A), which is insufficient to state a claim. *See Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do."). Therefore, the Court grants the City's motion to dismiss Count I for failure to state a claim.

As to whether the annual physical examination is job-related and consistent with business necessity, this inquiry is an affirmative defense under the ADA, *see Allmond,* 558 F.3d at 1316; 42 U.S.C. § 12113(a), and the Eleventh Circuit has been clear that "[a] complaint need not anticipate and negate affirmative defenses and should not ordinarily be dismissed based on an affirmative defense unless the defense is apparent on the face of the complaint." *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) (citing *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011)); *see Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024) (citation modified) (noting "a plaintiff is not required to negate an affirmative defense in its complaint"). While there might be binding caselaw that suggests Plaintiff's ADA claims will not survive summary judgment under the business-necessity affirmative defense, *see Watson v. City of Mia. Beach*, 177 F.3d 932, 935–

9

36 (11th Cir. 1999), the Court cannot say that the affirmative defense appears on the face of the Complaint. The City, however, is not barred from reraising this affirmative defense at a later time.

Turning to Plaintiff's ADA retaliation claim in Count II, the City argues that Plaintiff's retaliation claim should be dismissed since he "did not engage in any protected activity." Dkt. 30 at 10. Plaintiff contends that "he objected to unlawful examinations and discriminatory treatment, Defendants knew of this opposition, and he suffered adverse actions as a result." Dkt. 32 at 7.

The ADA prohibits retaliation against an individual "because such individual has opposed any act or practice made unlawful [by the ADA] or . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a).[3] When a plaintiff relies on circumstantial evidence, as Mr. Griffin does here, courts evaluate an ADA retaliation claim using the same burden-shifting framework applied to Title VII retaliation claims. *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1219 (11th Cir. 2021). Under that framework, the plaintiff must first establish a prima facie case of retaliation. *Batson v. Salvation Army*, 897 F.3d 1320, 1329–30 (11th Cir. 2018). "To

---

[3] As discussed below, the Court will apply this same framework when discussing Plaintiff's Title VII and GINA retaliation claims. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) ("[W]e assess ADA retaliation claims under the same framework we employ for retaliation claims arising under Title VII."); *Conner-Goodgame v. Wells Fargo Bank, N.A.*, No. 2:12-CV-03426-IPJ, 2013 WL 5428448, at *10 (N.D. Ala. Sept. 26, 2013) ("Because GINA's anti-retaliation provision tracks the language of Title VII's anti-retaliation provision, the court has analyzed Plaintiff's retaliation claim under Title VII's framework for retaliation.").

establish a prima facie case of retaliation under either act, an employee must demonstrate (1) that she engaged in statutorily protected conduct, (2) that she suffered an adverse employment action, and (3) that a causal connection exists between the two." *Id.* at 1329. The City's motion to dismiss does not challenge the second element, so the Court addresses the first and third. Dkt. 30 at 11.

A statutorily protected activity for an ADA retaliation claim is "oppos[ing] any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a); *see also Calvo v. Walgreens Corp.*, 340 F. App'x 618, 625–26 (11th Cir. 2009) (noting that opposing unlawful practices or filing charges against the employer are the bases for a retaliation claim).

To satisfy the causation requirement, Plaintiff needs only to "prove that the protected activity and the adverse action are not completely unrelated." *Higdon*, 393 F.3d at 1220 (citation modified). This element is satisfied if the plaintiff "provides sufficient evidence of knowledge of the protected expression and that there was a close temporal proximity between this awareness and the adverse action." *Id.* (citation modified). For temporal proximity alone to be sufficient circumstantial evidence of a causal connection, it "must be very close." *Id.* (quotation marks omitted). "If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Id.*

11

Here, Plaintiff has failed to sufficiently allege that he engaged in protected activity. Plaintiff's response to the motion to dismiss claims he "objected to unlawful examinations and discriminatory treatment." Dkt. 32 at 7 (citing Dkt. 5 ¶¶ 50–52). However, an examination of the Complaint only shows a conclusory allegation that "Plaintiff opposed and complained about the unlawful employment practices and the foregoing adverse actions were taken because the Plaintiff opposed the invasive and illegal mandatory medical procedures that the Defendants required for their annual fitness for duty." Dkt. 5 ¶ 50. This allegation is nothing more than a "formulaic recitation" of a retaliation element that "will not do." *Twombly*, 550 U.S. at 555.

When looking at other parts of the Complaint, Plaintiff vaguely alleges that "throughout his employment with the [City,] [he] voiced his objections to the breadth and intrusive nature of the mandatory medical examinations. Dkt. 5 ¶¶ 17, 18. These unsubstantiated allegations do not allege that Plaintiff engaged in protected activity, as they do not describe to whom he made these objections, when he made said objections following the CBA's adoption in August 2019, and how the content of these objections related to an unlawful practice under the ADA. To the extent Plaintiff claims his testimony at the August 29, 2022, investigation hearing is protected activity, the Complaint says nothing about whether Plaintiff complained about an unlawful practice under the ADA at said hearing. *See id.* ¶¶ 24–34. At most, the Complaint shows only that Plaintiff told the Life Scan technician—not Fire Chief

Mixon or any other decision-maker—that he did not want to take a TB test. *Id.* ¶¶ 32, 33.

Even if Plaintiff's continued objections to the annual physical examinations constituted a protected activity, the Complaint still fails to show causation. Again, the Complaint claims that Plaintiff's termination was the "direct and proximate result of the violations of the ADA," but fails to allege any facts supporting this assertion. Dkt. 5 ¶¶ 51, 52. While the Court accepts as true that Plaintiff continually objected to the annual examination mandated by the CBA, the Complaint does not allege that Fire Chief Mixson or any other decisionmaker terminated Plaintiff because he objected to the mandatory examinations.[4] Nor does the Complaint provide any dates to determine when these continuing objections were made. As such, the Court cannot even determine whether Plaintiff is relying on temporal proximity to prove causation, since the Complaint lacks specific dates for when the protected activity occurred. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (discussing temporal proximity limitations). As pled, the Court dismisses the ADA retaliation claim in Count II.

---

[4] Indeed, Plaintiff's Complaint seems to allege the opposite, stating that Fire Chief Mixson was well aware of Plaintiff's objections to the mandatory physical examinations, but no adverse employment action was ever taken against Plaintiff during the three years between the CBA's adoption in August 2019 and the August 2022 examination at Life Scan. *See* Dkt. 5 ¶¶ 15, 19, 21. Moreover, the allegations in the Complaint make clear that Plaintiff's termination was due to his (alleged) attempt to manipulate the results of his annual physical, not due to his ongoing complaints that the mandatory physical examination violated the ADA. *Id.* ¶¶ 24–35.

### b. Counts III & IV—GINA discrimination and retaliation claims

In Counts III and IV, Plaintiff brings GINA discrimination and retaliation claims, alleging that the City "required genetic test and information" from Plaintiff. Dkt. 5 ¶ 55. The City moves to dismiss the GINA discrimination claims because Plaintiff has failed to allege that Plaintiff was required to disclose genetic information. Dkt. 30 at 7. The Court agrees.

Under GINA, it is unlawful for an employer to refuse to hire or otherwise discriminate against an employee "because of genetic information with respect to the employee" or to request, require, or purchase an employee's genetic information, except in certain circumstances. 42 U.S.C. § 2000ff-1(a)–(b). As noted by other district courts in the Eleventh Circuit, "genetic information isn't the same as medical information generally." *Gabriel v. SLS Lux Brickell Hotel*, No. 24-CV-23572, 2025 WL 2020154, at *4 (S.D. Fla. Jan. 15, 2025), *appeal dismissed sub nom. Gabriel v. SLS LUX Brickell Hotel & Residences*, No. 25-12416-F, 2025 WL 2902042 (11th Cir. Aug. 21, 2025); *see also* G*onzalez v. Real Hosp. Grp., LLC*, 2022 WL 706709, at *2 (S.D. Fla. Mar. 8, 2022) (collecting cases). The statute narrowly defines "genetic information" as information about an "individual's genetic tests," the genetic test of an individual's family members, and "the manifestation of a disease or disorder" in an individual's family members. 42 U.S.C. § 2000ff(4)(A). A "genetic test" is "an analysis of human DNA, RNA, chromosomes, proteins, or

14

metabolites, that detects genotypes, mutations, or chromosomal changes." *Id.* § 2000ff(7)(A).

Based on the text of the statute, other district courts have found that "[t]he basic intent of GINA is to prohibit employers from making a predictive assessment concerning an individual's propensity to get an inheritable genetic disease or disorder based on the occurrence of an inheritable disease or disorder in [a] family member." *Bell v. PSS World Med., Inc.*, No. 3:12-CV-381-J-99MMH, 2012 WL 6761660, at *3 (M.D. Fla. Dec. 7, 2012), *report and recommendation adopted*, No. 3:12-CV-381-J-99MMH, 2013 WL 45826 (M.D. Fla. Jan. 3, 2013); *see also* 42 U.S.C. § 2000ff(4)(A)(iii) ("The term 'genetic information' means, with respect to any individual, information about . . . the manifestation of a disease or disorder in family members").

Here, Plaintiff's sparse allegations for his GINA discrimination claim never allege that the City ever requested, required, or used his "genetic information" to determine whether he (or a family member) had a genetic disorder. *See* Dkt. 5 ¶¶ 55–57. Nor does the Complaint even allege that Plaintiff underwent a "genetic test" as defined by GINA. Indeed, the August 2022 medical evaluation only involved "a tuberculin injection, ultrasonic imaging of the visceral organs and genitalia, medical questionnaire, vision/auditory testing[,] and physical fitness evaluation," Dkt. 5 ¶ 22, none of which involve "an analysis of human DNA, RNA, chromosomes,

15

proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes." 42 U.S.C. § 2000ff(7)(A).

To the extent Plaintiff is alleging that the TB test (via the tuberculin injection) counts as a "genetic test" that produces "genetic information," it clearly does not—tuberculosis is an infectious disease generally caused by the *Mycobacterium tuberculosis* bacteria, not a genetic disorder. Taking it a step further, even if the TB test results fall within GINA, Plaintiff has not presented any allegation that the City used the information to discriminate against Plaintiff—that is, the City terminated Plaintiff because of the TB test results. Notably, the Complaint does not mention the results of the TB test or any other medical outcome from the August 2022 examination at Life Scan. In short, Plaintiff does not fall within the ambit of the statute. *See Bell*, 2012 WL 6761660, at *3 (holding that a plaintiff fails to state a valid claim under GINA with conclusory allegations devoid of factual support); *Roberts v. Computer Disc. Warehouse*, No. 2:22-CV-00250-SCJ-JCF, 2023 WL 11979713, at *4 (N.D. Ga. Nov. 27, 2023), *report and recommendation adopted*, No. 2:22-CV-0250-SCJ, 2024 WL 4800521 (N.D. Ga. Jan. 3, 2024) (finding Plaintiff has failed to state a claim under GINA). Thus, the Court dismisses Plaintiff's GINA discrimination claim in Count III.

Plaintiff's GINA retaliation claim in Count IV does not fare any better. Under GINA, "[n]o person shall discriminate against any individual because such

individual has opposed any act or practice made unlawful by this title or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 2000ff-6(f). "Because GINA's anti-retaliation provision tracks the language of Title VII's anti-retaliation provision, [this] [C]ourt . . . analyse[s] Plaintiff's retaliation claim under Title VII's framework for retaliation. *Conner-Goodgame v. Wells Fargo Bank, N.A.*, No. 2:12-CV-03426-IPJ, 2013 WL 5428448, at *10 (N.D. Ala. Sept. 26, 2013) (comparing 42 U.S.C. § 2000ff–6(f) with 42 U.S.C. § 2000e–3(a)).

Here, Plaintiff has failed to provide any evidence that Defendants discriminated against them on the basis of genetic information, a prerequisite to bringing an anti-retaliation claim under GINA. *Bonanza v. Walmart Corp.*, No. 6:24-CV-1076-JSS-DCI, 2024 WL 5671535, at *4 (M.D. Fla. June 17, 2024). Regardless, Plaintiff's GINA retaliation claim also fails for the same reasons discussed when dismissing Plaintiff's ADA retaliation claim. Again, Plaintiff has failed to sufficiently allege when he engaged in protected activity, to whom he made these complaints, and how any complaints about alleged GINA violations led to his termination. *See* Dkt. 5 ¶¶ 55–57. Plaintiff's vague and conclusory allegations that he objected to required "genetic tests and information," and that these "objections were a motivating factor" for his termination, *id.* ¶¶ 55, 57, are nothing more than "legal conclusions masquerading as facts." *Jackson*, 372 F.3d at 1262. The Court

17

grants the City's motion to dismiss the GINA retaliation claim in Count IV. Plaintiff's counsel should examine his Federal Rule of Civil Procedure 11 obligations before reasserting any such claims.

### c. Counts V & VI—Title VII sex discrimination and retaliation claims

Next, the City seeks dismissal of Plaintiff's Title VII sex discrimination claim, alleging that he was subjected to disparate treatment after objecting to the City allowing some medical evaluations to be optional for females but mandatory for males. Dkt. 5 ¶¶ 68–72. The City argues the "Complaint does not plead any facts plausibly demonstrating that the Defendant took any actions against him on the basis of his sex. Rather, he merely pleads, in conclusory fashion, that some of the medical testing was optional for female employees while mandatory for males." Dkt. 30 at 10. Plaintiff responds, contending the City's arguments are fact-intensive and require discovery to determine "whether differing testing standards reflect bona fide occupational qualifications, legitimate biological distinctions, or a pretext for discrimination." Dkt. 32 at 5.

Title VII prohibits employment discrimination based on race, color, national origin, religion, and sex. 42 U.S.C. § 2000e−2(a)(1). Where, as here, a plaintiff alleges Title VII discrimination based on disparate treatment, he must show intent to discriminate. *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1273 (11th Cir. 2000). A plaintiff may "use direct evidence, circumstantial evidence, or both" to

18

demonstrate disparate treatment discrimination in violation of Title VII. *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023). When relying on circumstantial evidence, a plaintiff can establish a prima facie discrimination by showing that: "(1) she belongs to a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified to perform the job in question, and (4) her employer treated similarly situated employees outside her class more favorably." *Id.* (internal quotation marks omitted) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). The fourth requirement is met when the plaintiff presents "evidence of a comparator—someone who is similarly situated in all material respects." *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022) (citation modified). "A 'similarly situated' comparator typically will have engaged in the same basic conduct (or misconduct); be subject to the same employment policy, guideline, or rule; have the same supervisor(s); or share the plaintiff's employment or disciplinary history." *Jimenez v. U.S. Att'y Gen.*, 146 F.4th 972, 996 (11th Cir. 2025) (citing *Lewis v. City of Union City*, 918 F.3d 1213, 1227–28 (11th Cir. 2019) (en banc)).

Here, assuming Plaintiff has satisfied the other requirements, Plaintiff has failed to sufficiently allege the fourth requirement of identifying a similarly situated individual of a different sex who was treated more favorably than Plaintiff. Indeed, the complaint does not "even try to draw a stick figure[,]" of

19

comparators. *Bartholomew v. Lowe's Home Centers, LLC*, No. 2:19-CV-695-FTM-38MRM, 2020 WL 321372, at *6 (M.D. Fla. Jan. 21, 2020). Instead, all that is provided are the unsupported allegations that "Plaintiff inquired about medical evaluations which were optional for female employees but were mandatory for male employees," and "Defendant subjected the Plaintiff to harassment and disparate treatment based upon his objections and sex." Dkt. 5 at ¶¶ 69, 71. Notably, the Complaint does not even allege that these nebulous "female employees" were also firefighters or paramedics like Plaintiff. *Id.* ¶¶ 13, 69. As pled, Count V cannot withstand dismissal. *See Arrington v. Alabama Power Co.*, 769 F. App'x 741, 746 (11th Cir. 2019) (affirming dismissal for failure to plead a prima facie case of disparate treatment when plaintiff did not plead that a similarly situated employee outside of its protected class was treated less favorably); *Litman v. Sec'y, of the Navy*, 703 F. App'x 766, 769 (11th Cir. 2017) (affirming dismissal of a disparate treatment claim when plaintiff alleged nowhere that similarly situated employees were treated more favorably); *Arafat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x 872, 874 (11th Cir. 2013) (affirming dismissal for failure to plead the existence of similarly situated employees when plaintiff merely generically referenced younger males).

To be clear, while the "*McDonnell Douglas*'s burden-shifting framework is an evidentiary standard, not a pleading requirement," Plaintiff still needs to "provide

20

enough factual matter (taken as true) to suggest intentional [sex] discrimination" under Title VII. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (citation modified). Nowhere in Plaintiff's Complaint does Plaintiff identify a similarly situated individual of a different sex who was treated more favorably than Plaintiff, *see generally* Dkt. 5, and simply alleging that he was treated differently because of his sex is insufficient to state a disparate treatment claim under Title VII. *See Jackson*, 372 F.3d at 1271 (citation omitted) ("[U]nsupported conclusions of law or of mixed law and fact are not sufficient to withstand a dismissal under Rule 12(b)(6)."); *Garvey v. Sec'y, United States Dep't of Lab.*, No. 8:22-CV-2309-WFJ-AEP, 2023 WL 3057474, at *5 (M.D. Fla. Apr. 24, 2023). Thus, the Court dismisses the sex discrimination claim in Count V.

As to Plaintiff's Title VII retaliation claim in Count VI, the Court incorporates by reference its discussion dismissing the prior ADA and GINA retaliation claims against the City. None of the allegations in Counts VI provides additional facts that would alter the Court's previous finding that Plaintiff's retaliation claims are due to be dismissed. Again, the Complaint never alleges when he engaged in protected activity of "object[ing] to the disparate practice," to whom he made these objections, and how these objections about alleged Title VII violations were a "motivating factor" for his termination. Dkt. 5 ¶¶ 70–72. Put simply, Plaintiff's meager allegations are totally devoid of any factual support and nothing more than "legal

21

conclusions masquerading as facts." *Jackson*, 372 F.3d at 1262. Therefore, the Court also dismisses Plaintiff's Title VII retaliation claim in Count VI.

>     d. *Counts VII & VIII—Section 1983 and Florida Constitution claims*

Finally, Plaintiff's 42 U.S.C. § 1983 claims and state constitutional claim are also due to be dismissed. As an initial matter, Plaintiff's Section 1983 claim is an impermissible shotgun pleading. A shotgun pleading fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015) (citations omitted). "It employs a multitude of claims and incorporates by reference all of its factual allegations into each claim, making it nearly impossible for Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018).

In this case, Plaintiff's Section 1983 claim "commits the sin of not separating into a different count each cause of action or claim for relief." *Weiland*, 792 F.3d at 1322–23. In a single sentence, Plaintiff alleges violations under three different constitutional amendments—the Fourth, Fifth, and Fourteenth. Dkt. 5 ¶ 91. Worse yet, Plaintiff does not provide any factual allegations indicating what type of Section 1983 claim is being brought under the Fourth Amendment (e.g., excessive force, unlawful arrest, etc.) or the Fourteenth Amendment (e.g., Equal Protection Clause,

22

substantive due process, or procedural due process). Nevertheless, the Court believes Plaintiff is attempting to allege a municipal liability claim under Section 1983 for violation of "Plaintiff's personal privacy rights protected by the Fourth Amendment." *Id.* ¶¶ 91, 92. Accordingly, the Court focuses its analysis on the alleged Fourth Amendment violation under Section 1983.[5]

Generally, municipalities—like the City—cannot be held liable on a theory of *respondeat superior* or for acts committed by their officers. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691, 693–94 (1978). Instead, municipal entities may be held liable under § 1983 only where "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. This standard requires a plaintiff to show "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

---

[5] The Court will also analyze Plaintiff's Fourth Amendment Section 1983 claim in Count VII and the alleged violation of the Florida Constitution's search and seizure provision in Count VIII together, as the Florida Constitution's search and seizure provision follows the United States Supreme Court's caselaw on the Fourth Amendment. *See Johnston v. Tampa Sports Auth.*, 530 F.3d 1320, 1325 (11th Cir. 2008) ("In evaluating [the plaintiff's] claim under the Florida Constitution, we are compelled to apply the facts of this case to Florida constitutional law as interpreted by the Florida Supreme Court, and, absent a contrary ruling by the Florida Supreme Court, Florida's intermediate appellate courts. . . . As the text of the Florida Constitution's search and seizure provision explains, the Florida Constitution affords the same protections against unreasonable searches and seizures as the Fourth Amendment, and Florida courts follow opinions of the United States Supreme Court in interpreting the Florida Constitution's search and seizure protections. . . . Our analysis of [the plaintiff's] claims under the Fourth Amendment therefore applies equally to [the plaintiff's] claims under the Florida Constitution.").

Plaintiff's Complaint fails to meet the first requirement because it fails to demonstrate that his constitutional rights were violated. Article I, Section 12 of the Florida Constitution and the Fourth Amendment to the United States Constitution afford protections against "unreasonable searches and seizures." Fla. Const. Art. 1 § 12; U.S. Const. amend. IV. If Plaintiff is asserting a Fourth Amendment claim under Section 1983, much more is needed. *See Am. Fed'n of State, Cnty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 869 (11th Cir. 2013) (citing *Hatley v. Dep't of the Navy,* 164 F.3d 602, 604 (Fed. Cir. 1998)) ("Another category—a natural extension of the Supreme Court's holding in *Von Raab*—encompasses police officers, . . . correctional officers who interact with parolees or inmates in a prison, . . . and firefighters."); *Friedenberg v. Sch. Bd. of Palm Beach Cnty.*, 911 F.3d 1084, 1091 (11th Cir. 2018) (discussing the "special needs" exception).

Here, even when accepting the meager factual allegations as true, Plaintiff fails to allege any Fourth Amendment violation since the Complaint fails to allege that any private interests outweigh the City's interest in public safety. The Complaint vaguely asserts that the August 2022 physical examination violated "Plaintiff's personal privacy rights" due to the exam's "breadth and intrusive nature." Dkt. 5 ¶¶ 18, 92. But Plaintiff never specifies what aspect of the physical examination was so "intrusive" and overbroad that it violated Plaintiff's diminished expectation of privacy due to his job as a firefighter and paramedic. *See Nat'l Treasury Emps.*

24

*Union v. Von Raab*, 489 U.S. 656, 671 (1989) ("[I]t is plain that certain forms of public employment may diminish privacy expectations even with respect to . . . personal searches."); *Scott*, 717 F.3d at 869 ("Another category—a natural extension of the Supreme Court's holding in *Von Raab*—encompasses . . . firefighters."); *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, No. CV 120-100, 2021 WL 2827293, at \*7 (S.D. Ga. July 7, 2021) (dismissing the plaintiff's Fourth Amendment search and seizure claim, as her employer's drug test fell under the special needs exception).

Plaintiff must also address consent to the annual physical examinations. The annual physical examinations stem from the CBA between the City and Local 747, Dkt. 5 ¶¶ 15, 16, and Plaintiff explicitly admits he "was a member of St. Petersburg Fire Fighters Union, Local 747 and covered by the bargaining unit and subject to Local 747's Collective Bargaining Agreement with the City of South Pasadena and the South Pasadena Fire Department." *Id.* ¶ 8. In other words, Local 747 represented the unionized firefighters in St. Petersburg—including Plaintiff—during negotiations, and the CBA adopted on August 28, 2019, binds Plaintiff to the agreement's terms. *See id.* ¶ 15 ("The Parties are subject to a [CBA] dated August 28, 2019, between the City of South Pasadena and the St. Petersburg Association of Firefighters Local 747.").

In short, Plaintiff has failed to present any significant allegations that support his claim that the City violated his Fourth Amendment rights. Without any underlying constitutional violation, Plaintiff's municipal liability claim and Florida constitutional violation claim fail. The Court grants the City's motion to dismiss Counts VII and VIII.

**II.    Local 747's Motion to Dismiss Count IX**

Local 747's motion seeks dismissal of the single ADA discrimination claim in Count IX. Local 747 asserts that the ADA claim is time-barred since Plaintiff "failed to file a charge against the Local challenging the medical exam requirement at issue within 300 days after Local 747 entered into the CBA on August 28, 2019." Dkt. 31 at 5. For the reasons discussed below, the Court agrees that the ADA claim against Local 747 is time-barred and due to be dismissed.

Plaintiff claims Local 747 violated the ADA when it "negotiated for mandatory annual medical examinations" since the examinations were impermissible medical inquiries. Dkt. 5 ¶ 99; *see* 42 U.S.C. § 12112(d)(4)(A). However, an ADA plaintiff must file a charge complaining about an allegedly unlawful employment practice with the EEOC within 180 days of the employment practice, *see* 42 U.S.C. § 2000e–5(e)(1);  42 U.S.C. § 12117(a), "but the period for filing a charge with the EEOC may be extended to 300 days if the complainant first files a timely charge in a state or local agency in a deferral state," like Florida.

*Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001) (citation modified); *see Joe's Stone Crabs*, 296 F.3d at 1271 ("For a charge to be timely in a deferral state such as Florida, it must be filed within 300 days of the last discriminatory act. . . . Accordingly, only those claims arising within 300 days prior to the filing of the EEOC's discrimination charge are actionable.").

Despite this strict deadline, a plaintiff's ADA discrimination claim may still be viable past the deadline under the continuing violations doctrine. *See Joe's Stone Crabs*, 296 F.3d at 1271. When determining whether a discriminatory employment practice constitutes a continuing violation, the Court "must distinguish between the present consequence of a one-time violation, which does not extend the limitations period, and the continuation of the violation into the present, which does." *Id.* (citation modified). Further, the doctrine does not apply to untimely claims of discrete acts, "even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Rather, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.*

Here, the Court finds that the ADA discrimination claim against Local 747 is time-barred because the alleged unlawful employment practice—Local 747's negotiation and adoption of a CBA in August 2019—is a discrete employment action. The Complaint plainly states that the City and Local 747 adopted the CBA on August 28, 2019, Dkt. 5 ¶ 15, and it is Local 747's "negotiat[ion] for mandatory

27

annual medical examinations which violate the Plaintiff's rights under the ADA." *Id.* ¶ 99. Because the negotiation and subsequent adoption of the CBA is a discrete act, Plaintiff's awareness of and duty to assert his rights was triggered once the CBA was adopted in August 2019. *See Prieto v. City of Mia. Beach*, 190 F. Supp. 2d 1340, 1348 (S.D. Fla. 2002) (citing *Knight v. Columbus, Ga.,* 19 F.3d 579, 585 (11th Cir.1994)) (noting that the adoption of a consent decree that violates Title VII is a discrete act, so if "such a violation was known to the plaintiffs at the time of their hire, . . . the continuing violation theory is inapplicable"); *see also Joe's Stone Crabs*, 296 F.3d at 1272 (noting "discrete, one-time employment events that should have put the [plaintiff] on notice that a cause of action had accrued" do not constitute continuing violations). Therefore, if the annual physical examination provision in the CBA violated the ADA, Plaintiff's discrimination charge must have been filed with the FCHR or the EEOC within 300 days—i.e., by June 23, 2020. The Complaint, however, clearly alleges that his charge of discrimination with the FCHR and EEOC (assuming it was against Local 747)[6] was not filed until April 24, 2023. *Id.* ¶¶ 10, 41. Thus, Plaintiff's ADA discrimination charge is untimely.

---

[6] Local 747's motion claims that the discrimination charge alleged in the Complaint was only against the City, not Local 747. Dkt. 31 at 3 n.1. The actual charge of discrimination against Local 747, dated May 4, 2023, is attached to Local 747's motion to dismiss. *See* Dkt. 31-2 at 2. When considering this EEOC charge, Plaintiff's ADA discrimination claim in Count IX remains untimely because May 4, 2023, falls well outside the 300-day filing window for a charge of discrimination.

28

Plaintiff resists this outcome, arguing that Local 747 "misstates" his ADA claim and that the continuing violation doctrine applies. Dkt. 32 at 9. Plaintiff contends he is challenging "the repeated enforcement of Article VI's medical examination requirements during the statutory period[,] not merely the 2019 adoption of the CBA." *Id.* at 10. The Court disagrees for two reasons.

First, as discussed above, the Complaint unmistakably alleges that the ADA violation in Count IX is Local 747's "negotiat[ion] for mandatory annual medical examinations which violate the Plaintiff's rights under the ADA." Dkt. 5 ¶ 99. As such, the Court construes the Complaint to be bringing a (discrete) ADA violation for Local 747 negotiation and adoption of an unlawful CBA on August 28, 2019. *Id.* ¶ 15. Contrary to Plaintiff's claims, the allegations in Count IX are not about Plaintiff's ongoing objections to the CBA during his employment.

Second, the enforcement of the CBA's physical examination provision in August 2022 constitutes a *separate* and *distinct* ADA violation that forms the basis of Plaintiff's ADA discrimination claim in Count I against the City. *Id.* ¶¶ 21, 44. While the alleged violations in Counts I and IX may be related due to the CBA, the continuing violation doctrine does not apply to untimely discrete acts, "even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113; *see Equal Emp. Opportunity Comm'n v. Army Sustainment, LLC*, No. 1:20-CV-234-RAH-CWB, 2023 WL 6276341, at *6 (M.D. Ala. Sept. 26, 2023) (declining to apply

29

the continuing violation doctrine since the alleged unlawful employment practices were all discrete acts). In other words, two discrete ADA violations are being alleged—an untimely ADA violation in Count IX based on the adoption of an unlawful CBA in August 2019 and a timely ADA violation in Count I based on the August 2022 physical examination. Accordingly, the continuing violation doctrine does not extend the actionable time period here beyond the charging period. The Court grants Local 747's motion to dismiss Count IX as time-barred.

**CONCLUSION**

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendant City of South Pasadena's Motion to Dismiss, Dkt. 30, is **GRANTED**.

2. Defendant Local 747's Motion to Dismiss, Dkt. 31, is **GRANTED**.

3. Plaintiff Griffin's Complaint, Dkt. 5, is **DISMISSED**. Any amended complaint is due within **FOURTEEN (14) days** from the entry of this Order.[7]

**DONE AND ORDERED** at Tampa, Florida, on February 6, 2026.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

---

[7] Plaintiff's counsel and his client should also reexamine their position. Firefighters reside in close quarters. They must be strong and hale. They must be able to provide emergency lifesaving techniques in difficult circumstances to people of varying health. *See Cremeens v. City of Montgomery, Ala.*, 427 F. App'x 855, 858 (11th Cir. 2011) ("The physical fitness requirements are directly related to a Fire Investigator's duty to fight fires, and they are necessary to ensure that Fire Investigators are able to perform that function when called upon to do so.").

**COPIES FURNISHED TO:**
Counsel of Record