**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**NATHANIEL GRIFFIN,**

    Plaintiff,

v.                                    Case No. 8:25-cv-02787-WFJ-CPT

**CITY OF SOUTH PASADENA**,

    Defendant.

_____/

**<u>ORDER</u>**

Before the Court is Defendant City of South Pasadena's (the "City") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 39. Plaintiff Griffin has responded in opposition, Dkt. 42, and Defendant replied. Dkt. 43. After careful consideration, the Court grants in part and denies in part the City's motion to dismiss.

**BACKGROUND**

This employment dispute centers around Plaintiff Griffin's termination from the South Pasadena Fire Department due to his refusal to participate in an annual physical evaluation, which all South Pasadena Fire Department employees must undergo pursuant to the Collective Bargaining Agreement ("CBA") between the St. Petersburg International Association of Fire Fighters, Local 747 ("Local 747") and the City.

On or about June 8, 2018, Plaintiff was hired by the City to be a "firefighter/paramedic." Dkt. 36 ¶ 14. The following year, on August 28, 2019, the City and Local 747 finalized a CBA that applied to all South Pasadena Fire Department employees. *Id.* ¶ 16; *see* Dkts. 31-1, 39-1, 39-3 (showing the CBA between the City and Local 747).[1] Under Article 6 of the CBA, all South Pasadena Fire Department employees are subject to annual physical examinations "to determine whether or not the employee is fit for duty." Dkt. 39-1 at 1. When evaluating the results of the physical examination, the CBA requires the physician to follow the national guidelines outlined in the National Fire Protection Association ("NFPA") 1582, Chapter 9. *Id*. As relevant to this lawsuit, Plaintiff claims the annual physical examination included "tuberculin injection, ultrasonic imaging of the visceral organs and genitalia/reproductive organs, digital rectal examination, and portions of [a] medical questionnaire." Dkt. 36 ¶ 19 (emphasis omitted). Plaintiff classifies these medical evaluations as the "Complained-of Disability Searches." *Id.*

Plaintiff alleges that "throughout his employment with the Defendant[,] immediately prior to the August 2, 2022 evaluation, and after the . . . Adverse

---

[1] Ordinarily, when ruling upon a motion to dismiss, a court considers only the "four corners of the complaint" and the exhibits attached to the complaint. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010); *see Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023). However, under the doctrine of incorporation by reference, a court may also consider a document outside the four corners if it "is central to the plaintiff's claims and is undisputed in terms of authenticity," regardless of whether it is "mentioned in" or "attached to" the complaint. *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005); *see Johnson v. City of Atlanta*, 107 F.4th 1292, 1299–1300 (11th Cir. 2024). Here, the CBA attached to Defendant Local 747's motion to dismiss is central to Plaintiff's claims, as the Complaint references the CBA multiple times in connection with his ADA, Title VII, and GINA claims, and the attachment's authenticity is not disputed by Plaintiff. Dkt. 36 ¶¶ 8, 16–26.

Employment Actions, [Plaintiff] voiced his objections as to the breadth, arbitrariness, and intrusive nature of the mandatory medical examinations" to various supervisors, the Deputy Fire Chief, the Fire Chief, the Union President, the Union Vice President, the Union Steward, and the Fire Commissioner. *Id.* ¶ 26.

On August 2, 2022, Plaintiff was scheduled for an annual physical examination at Life Scan Wellness Center ("Life Scan"). *Id.* ¶ 31. While at Life Scan, Plaintiff complained to the staff about the intrusive nature of the examinations, but still "made himself immediately available . . . for evaluation, and at no point refused any portion." *Id.* ¶¶ 38–39. A Life Scan staff member eventually told Plaintiff that it was too late to coordinate an accommodation and that he would have to reschedule his exam. *Id.* ¶ 40. On August 5, 2022, Fire Chief David Mixson provided Plaintiff a Notice of Formal Investigation to be held on August 11, 2022, alleging multiple violations. *Id.* ¶ 45. Plaintiff engaged in this investigation and agreed "to participate in the Life Scan medical evaluation" while still "preserving and asserting his continued objections to the evaluations." *Id.* ¶ 46.

On August 17, 2022, Fire Chief Mixson delivered a Notice of Discipline, asserting a "failure to complete annual physical in an efficient manner, creating additional expense to [Defendant]. Disrespectful and unprofessional interaction with members of the public (Life Scan staff). Violations of Employee Handbook Sections 7-4 B (9), 7-4 B (7), 7-4 B (8), 7-4 C (17)." *Id.* ¶ 47. Plaintiff was then suspended

without pay for 24 hours. *Id.* ¶ 48. On August 24, 2022, Plaintiff appealed this adverse employment action to Fire Commissioner Thomas B. Reid, which was denied. *Id.* ¶¶ 51, 55.

On August 12, 2022, Plaintiff arrived at Life Scan for the rescheduled medical examination. *Id.* ¶ 57. During his examination, Plaintiff completed all the medical examinations, including the "Complained-of Disability Searches." *Id.* ¶ 58. On August 26, 2022, the City opened a second formal investigation into Plaintiff's actions during the medical examination at Life Scan. *Id.* ¶ 59. A hearing was held on August 29, 2022, at which Plaintiff testified and answered questions regarding what occurred during the annual physical examination. *Id.* ¶¶ 60, 61. On September 7, 2022, Fire Chief Mixson provided Plaintiff with a "written memorandum regarding FF/Paramedic Griffin['s] Conduct and Work Performance." *Id.* ¶ 62. Plaintiff alleges the memorandum stated the following:

> [O]n August 11, 2022, an interrogation was conducted and Fire Chief Mixson stated that Plaintiff's objections and conduct at the Life Scan examination were inappropriate.
>
> The memorandum stated that Plaintiff attended a rescheduled physical examination on August 12, 2022.
>
> The memorandum stated Life Scan informed Fire Chief Mixson that Plaintiff completed and passed the physical examination.
>
> The memorandum stated a Life Scan technician informed him that Plaintiff did not want the TB test performed on him.

> The memorandum alleged a lack of confidence in Plaintiff's ability "to follow strict medical protocols which is vital for the performance of his job."
>
> Fire Chief Mixson alleged he was informed that Plaintiff asked that he receive paperwork stating he underwent the test and that when told Life Scan would not provide such documentation, Plaintiff underwent the test.
>
> Fire Chief Mixson supported his findings with a non-verified, non-attested-to email provided to him by a third-party, and by his unilateral determination that Plaintiff's "version of the events of August 12, 2022 [are not] credible."
>
> Fire Chief Mixson stated in his memorandum that Plaintiff's behavior did not meet City standards, was insubordinate and significantly undermined public trust.

*Id.* ¶¶ 64–71. Plaintiff denies ever asking the Life Scan staff to lie about whether a TB test had been done. *Id.* ¶¶ 76–80.

Based on the investigation results, Fire Chief Mixson recommended terminating Plaintiff's employment. *Id.* ¶ 82. On September 13, 2022, the City terminated Plaintiff's employment. *Id.* ¶ 85. The same day, Plaintiff appealed his termination to Fire Commissioner Reid, but the appeal was denied. *Id.* ¶¶ 86, 90. On September 19, 2022, Plaintiff filed a grievance under the CBA's procedures, but the City refused to participate in the CBA's grievance process. *Id.* ¶¶ 93, 94.

On April 24, 2023, Plaintiff filed a charge of discrimination against the City with the Florida Commission on Human Rights ("FCHR") and the Equal Employment Opportunity Commission ("EEOC"), asserting discrimination based

on disability, genetic information, and sex, as well as retaliation. *Id.* ¶¶ 11–12, 96. Plaintiff received a Dismissal and Notice of Rights from the EEOC on July 22, 2025. *Id.* ¶ 12; *see* Dkt. 39-2 (showing Plaintiff's Charge of Discrimination with the FCHR and EEOC).[2]

On October 14, 2025, Plaintiff filed his first complaint, bringing nine counts against the City and Local 747. *See* Dkt. 5. After the Court dismissed this initial complaint against the City and Local 747, Dkt. 35, Plaintiff filed an Amended Complaint against the City, dropping Local 747 as a defendant. Dkt. 36. Plaintiff now asserts eight counts: (1) an Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, discrimination claim; (2) an ADA retaliation claim; (3) a Genetic Information Nondiscrimination Act ("GINA") discrimination claim; (4) a GINA retaliation; (5) a sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); (6) a retaliation in violation of Title VII; (7) a 42 U.S.C. § 1983 claim for violation of the Fourth Amendment; and (8) a 42 U.S.C. § 1983 procedural due process claim under the Fourteenth Amendment. Dkt. 36 ¶¶ 145–255. The City now moves to dismiss all eight counts. *See* Dkt. 39.

---

[2] Again, the Court considers the attached EEOC charge against the City under the doctrine of incorporation by reference. The EEOC charge is central to Plaintiff's ADA, GINA, and Title VII claims against the City, and the attachment's authenticity is not disputed by Plaintiff.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the plaintiff is entitled to relief to give the defendant fair notice of the claims and grounds. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted). In considering a Rule 12(b)(6) motion to dismiss, the court must construe the facts in the light most favorable to the plaintiff. *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (citation modified). However, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted).

## DISCUSSION

Based on a careful review of the pleadings, the Court grants in part the City's motion to dismiss. As discussed below, several of Plaintiff's GINA, Title VII, and Section 1983 claims still contain the same deficiencies that were discussed in the

Court's previous dismissal order. However, Counts I, II, and VII have been sufficiently pled and survive dismissal.

## I.  Count I—ADA discrimination claim

The City seeks dismissal of the ADA discrimination claim in Count I, primarily arguing that Plaintiff "has not alleged facts plausibly establishing that the annual medical examination constituted an improper inquiry into the nature or severity of his disability or whether he is an individual with a disability." Dkt. 39 at 4. The Court disagrees, as these deficiencies have been sufficiently addressed.

In Count I, Plaintiff asserts that portions of the City's mandatory physical examination for all South Pasadena Fire Department firefighters are impermissible medical inquiries under the ADA. Dkt. 36 ¶ 148. The ADA provides in relevant part:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

42 U.S.C. § 12112(d)(4)(A). An individual need not be disabled to be protected under this section. *See Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1310–11 (11th Cir. 2013).

While the statute and regulations do not define a "medical examination," the Eleventh Circuit has looked to the EEOC's enforcement guidance. *Carney v. Emory Univ.*, No. 24-13070, 2026 WL 1020480, at *3 (11th Cir. Apr. 15, 2026). "The

EEOC Enforcement Guidance defines a 'medical examination' as a 'procedure or test that seeks information about an individual's physical or mental impairments or health.'" *Id.* at \*4 (quoting *Kroll v. White Lake Ambulance Auth.*, 691 F.3d 809, 816 (6th Cir. 2012)). The EEOC also "explains that § 12112(d)(4) generally prohibits 'disability-related inquir[ies],' which are questions 'likely to elicit information about a disability.'" *Id.* (citing EEOC enforcement guidance). If a plaintiff makes that showing, then the employer can avoid liability if it demonstrates that the examination or inquiry was "job-related and consistent with business necessity." *Allmond v. Akal Sec., Inc.*, 558 F.3d 1312, 1316–17 (11th Cir. 2009); *see Owusu-Ansah*, 715 F.3d at 1311 (applying *Allmond*'s definitions to 42 U.S.C. § 12112(d)(4)(A)).

Here, the Amended Complaint sufficiently alleges a possible violation under 42 U.S.C. § 12112(d)(4)(A). Accepting the factual allegations as true, Plaintiff underwent mandatory "procedure[s] [and] test[s] that [sought] information about [Plaintiff's] physical . . . health" at Life Scan, and the inquiries were disability related. *Carney*, 2026 WL 1020480, at \*4; *see* Dkt. 36 ¶¶ 19, 57, 58; Dkt. 39-1 at 1 (showing list of procedures and tests a firefighter must undergo under the CBA). Contrary to the City's assertions, Plaintiff need not be disabled or regarded as disabled to bring his claim. *Owusu-Ansah*, 715 F.3d at 1310–11.

As to whether the annual physical examination is job-related and consistent with business necessity, this inquiry is an affirmative defense under the ADA, *see Allmond,* 558 F.3d at 1316; 42 U.S.C. § 12113(a), and the Eleventh Circuit has been clear that "[a] complaint need not anticipate and negate affirmative defenses and should not ordinarily be dismissed based on an affirmative defense unless the defense is apparent on the face of the complaint." *Isaiah v. JPMorgan Chase Bank, N.A.*, 960 F.3d 1296, 1304 (11th Cir. 2020) (citing *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011)); *see Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024) (noting "a plaintiff is not required to negate an affirmative defense in its complaint" (citation modified)). While there might be binding caselaw that suggests Plaintiff's ADA claims will not survive summary judgment under the business-necessity affirmative defense, *see Watson v. City of Mia. Beach*, 177 F.3d 932, 935–36 (11th Cir. 1999), the Court cannot say that the affirmative defense appears on the face of the Complaint. While the City's motion to dismiss Count I is denied, Defendant is free to raise this affirmative defense at a later stage of the proceeding.

However, Plaintiff's Amended Complaint has seemingly nestled another ADA discrimination claim in Count I—a "confidentiality claim" based on the City's alleged collection of a "unified log of its firefighter employees' collective medical data" during 2020 and 2021, "which was disseminated on a daily basis

10

indiscriminately among the labor unit." Dkt. 36 ¶ 127. The Court need not spend much time discussing this untimely claim.

An ADA plaintiff must file a charge complaining about an allegedly unlawful employment practice with the EEOC within 180 days of the employment practice, *see* 42 U.S.C. § 2000e–5(e)(1);  42 U.S.C. § 12117(a), "but the period for filing a charge with the EEOC may be extended to 300 days if the complainant first files a timely charge in a state or local agency in a deferral state," like Florida. *Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001) (citation modified); *see E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002) ("For a charge to be timely in a deferral state such as Florida, it must be filed within 300 days of the last discriminatory act. . . . Accordingly, only those claims arising within 300 days prior to the filing of the EEOC's discrimination charge are actionable."). Here, Plaintiff's charge of discrimination was not filed until April 24, 2023, Dkt. 36 ¶ 11, well after the "2020 and 2021" time period when the alleged confidentiality violation occurred. *Id.* ¶ 127. To the extent Count I alleges an ADA confidentiality violation, this claim is dismissed as time-barred.

## II.    Count II—ADA retaliation claim

Turning to Plaintiff's ADA retaliation claim in Count II, the City argues that Plaintiff's retaliation claim should be dismissed since he "did not engage in any protected activity in that no objectively reasonable person could conclude that his

objection to the routine mandatory medical examination constituted unlawful discrimination." Dkt. 39 at 14. For reasons discussed below, the Court finds that Plaintiff's ADA claim has been sufficiently pled at this time.

The ADA prohibits retaliation against an individual "because such individual has opposed any act or practice made unlawful [by the ADA] or . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a).[3] When a plaintiff relies on circumstantial evidence, as Mr. Griffin does here, courts evaluate an ADA retaliation claim using the same burden-shifting framework applied to Title VII retaliation claims. *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1219 (11th Cir. 2021). Under that framework, the plaintiff must first establish a prima facie case of retaliation. *Batson v. Salvation Army*, 897 F.3d 1320, 1329–30 (11th Cir. 2018). "To establish a prima facie case of retaliation under either act, an employee must demonstrate (1) that she engaged in statutorily protected conduct, (2) that she suffered an adverse employment action, and (3) that a causal connection exists between the two." *Id.* at 1329. The City's motion to dismiss does not challenge the second element, so the Court addresses the first and third. Dkt. 39 at 14.

---

[3] As discussed below, the Court will apply this same framework when discussing Plaintiff's Title VII and GINA retaliation claims. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) ("[W]e assess ADA retaliation claims under the same framework we employ for retaliation claims arising under Title VII."); *Conner-Goodgame v. Wells Fargo Bank, N.A.*, No. 2:12-CV-03426-IPJ, 2013 WL 5428448, at *10 (N.D. Ala. Sept. 26, 2013) ("Because GINA's anti-retaliation provision tracks the language of Title VII's anti-retaliation provision, the court has analyzed Plaintiff's retaliation claim under Title VII's framework for retaliation.").

A statutorily protected activity for an ADA retaliation claim is "oppos[ing] any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). To qualify for protection under the opposition clause, a plaintiff's "opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual." *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2008) (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997)). A plaintiff has only engaged in protected activity if the plaintiff "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016) (quoting *Little*, 103 F.3d at 960). This "includes both a subjective and an objective component." *Id.* The plaintiff must show both that she subjectively believed her employer engaged in an unlawful practice, and that this belief "was *objectively* reasonable in light of the facts and record presented." *Little*, 103 F.3d at 960. The objective reasonableness of the belief is measured by reference to controlling substantive law. *Furcron*, 843 F.3d at 1311. However, the plaintiff is not required to prove that the alleged discriminatory conduct was actually unlawful; rather, the opposed conduct need only be "close enough" to support the objectively reasonable belief. *Id.*

To satisfy the causation requirement, Plaintiff needs only to "prove that the protected activity and the adverse action are not completely unrelated." *Higdon v.*

*Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (citation modified). This element is satisfied if the plaintiff "provides sufficient evidence of knowledge of the protected expression and that there was a close temporal proximity between this awareness and the adverse action." *Id.* (citation modified). For temporal proximity alone to be sufficient circumstantial evidence of a causal connection, it "must be very close." *Id.* (quotation marks omitted). "If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Id.*

Here, Plaintiff corrected the deficiencies in his initial complaint and sufficiently alleged that he engaged in protected activity. There are now ample allegations about whom Plaintiff made complaints to (mainly Fire Chief Mixon during the first and second formal investigations), what part of the annual physical examination Plaintiff was objecting to as a violation of the ADA (i.e., the "Complained-of Disability Searches"), and when Plaintiff made those objections. Dkt. 36 ¶¶ 24–26, 32, 51–53, 57–72, 162. The Amended Complaint is also clear that Plaintiff subjectively believed that portions of the CBA's annual physical examination requirement violated the ADA, *id.* ¶¶ 38, 99–125, and these objections about being forced by an employer to undergo an (allegedly) unlawful medical examination are objectively reasonable in light of the controlling substantive law. *See Mullin v. Sec'y, U.S. Dep't of Veterans Affs.*, 162 F.4th 1296, 1308 (11th Cir.

14

2025) (recognizing that a plaintiff has "a private right of action under 42 U.S.C. § 12112(d)(4) irrespective of disability status" (citation omitted)). While Plaintiff's ADA claims may ultimately fail, Plaintiff is not required to prove that the discriminatory conduct complained of was actually unlawful. *Little*, 103 F.3d at 960. The conduct Plaintiff opposed need only "be close enough to support an objectively reasonable belief that it is." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999).

As to the City's arguments about a lack of causation, the Amended Complaint has enough allegations showing Fire Chief Mixon had knowledge of the protected expression and that there was a close temporal proximity between this awareness and Plaintiff's termination. As summarized above, Plaintiff complained to Fire Chief Mixon and Commissioner Reid about the "Complained-of Disability Searches" throughout his employment, during the formal investigations against him, and during his appeals. Dkt. 36 ¶¶ 19, 26, 32, 45–55, 57–64, 86–90, 162. The allegations also support temporal proximity as a basis for causation, as Plaintiff's termination on September 13, 2022, happened less than two months after he met with his supervisors "to discuss his objections to the Complained-of Disability Searches." *Id.* ¶¶ 32, 85; *see Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (noting "three to four month disparity between the statutorily protected expression

and the adverse employment action is not enough" for temporal proximity). As pled, Plaintiff's ADA retaliation claim in Count II survives dismissal at this time.

### III.   Counts III & IV—GINA discrimination and retaliation claims

In Counts III and IV, Plaintiff brings GINA discrimination and retaliation claims. The Amended Complaint now brings new allegations that "Plaintiff, as part of the objected-to questionnaire, was required to answer questions at the August 12, 2022, medical examination regarding the health status of his family members in direct violation of GINA." Dkt. 36 ¶ 173. The City moves to dismiss the GINA discrimination claim because the "conclusory assertion that Life Scan's questionnaire asked about his family's health status is insufficient to plausibly establish" a GINA violation. Dkt. 39 at 11. The Court agrees.

Under GINA, it is "unlawful employment practice for an employer to request, require, or purchase genetic information with respect to an employee or a family member of the employee," except in certain circumstances. 42 U.S.C. § 2000ff-1(b). As noted by other district courts in the Eleventh Circuit, "genetic information isn't the same as medical information generally." *Gabriel v. SLS Lux Brickell Hotel*, No. 24-CV-23572, 2025 WL 2020154, at *4 (S.D. Fla. Jan. 15, 2025), *appeal dismissed sub nom. Gabriel v. SLS LUX Brickell Hotel & Residences*, No. 25-12416-F, 2025 WL 2902042 (11th Cir. Aug. 21, 2025); *see also Gonzalez v. Real Hosp. Grp., LLC*, 2022 WL 706709, at *2 (S.D. Fla. Mar. 8, 2022) (collecting cases). The statute

16

narrowly defines "genetic information" as information about an "individual's genetic tests," the genetic test of an individual's family members, and "the manifestation of a disease or disorder" in an individual's family members. 42 U.S.C. § 2000ff(4)(A). A "genetic test" is "an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes." *Id.* § 2000ff(7)(A).

Based on the text of the statute, other district courts have found that "[t]he basic intent of GINA is to prohibit employers from making a predictive assessment concerning an individual's propensity to get an inheritable genetic disease or disorder based on the occurrence of an inheritable disease or disorder in [a] family member." *Bell v. PSS World Med., Inc.*, No. 3:12-CV-381-J-99MMH-JRK, 2012 WL 6761660, at *3 (M.D. Fla. Dec. 7, 2012) (citation modified), *report and recommendation adopted*, 2013 WL 45826 (M.D. Fla. Jan. 3, 2013); *see also* 42 U.S.C. § 2000ff(4)(A)(iii) ("The term 'genetic information' means, with respect to any individual, information about . . . the manifestation of a disease or disorder in family members").

Here, after the Court previously dismissed Plaintiff's vague allegations about GINA discrimination based on his own genetic information, Plaintiff now asserts the City violated GINA by requesting genetic information about his "family members." Dkt. 36 ¶¶ 103, 173. These allegations about the questionnaire Plaintiff had to

answer during his August 12, 2022, medical examination are even more nebulous than the initial complaint. Plaintiff never specifies which parts of the questionnaire inquired about a family member's "genetic information," how these questions involved "genetic information" as defined by the statute, and whether Life Scan even sent such information to the City. Instead, Plaintiff only alleges that the questionnaire unnecessarily inquired about the "health status of Plaintiff's family members, who are not engaged in firefighting as employees for Defendant." *Id.* ¶ 103. This assertion is nothing more than a formulaic recitation of 42 U.S.C. § 2000ff-1(b), which is insufficient to state a claim. *See Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do."). Nor are there any allegations that the City used the information to discriminate against Plaintiff—that is, the City terminated Plaintiff because of a family member's genetic information. Thus, the Court dismisses Plaintiff's GINA discrimination claim in Count III. *See Bell*, 2012 WL 6761660, at *3 (holding that a plaintiff fails to state a valid claim under GINA with conclusory allegations devoid of factual support); *Roberts v. Computer Disc. Warehouse*, No. 2:22-CV-00250-SCJ-JCF, 2023 WL 11979713, at *4 (N.D. Ga. Nov. 27, 2023) (finding Plaintiff has failed to state a claim under GINA), *report and recommendation adopted*, 2024 WL 4800521 (N.D. Ga. Jan. 3, 2024).

Plaintiff's GINA retaliation claim in Count IV does not fare any better. Under GINA, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this title or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 2000ff-6(f). "Because GINA's anti-retaliation provision tracks the language of Title VII's anti-retaliation provision, [this] [C]ourt . . . analyse[s] Plaintiff's retaliation claim under Title VII's framework for retaliation. *Conner-Goodgame v. Wells Fargo Bank, N.A.*, No. 2:12-CV-03426-IPJ, 2013 WL 5428448, at *10 (N.D. Ala. Sept. 26, 2013) (comparing 42 U.S.C. § 2000ff–6(f) with 42 U.S.C. § 2000e–3(a)).

Here, Plaintiff has failed to allege that the City improperly acquired a family member's genetic information, a prerequisite to bringing an anti-retaliation claim under GINA. *Bonanza v. Walmart Corp.*, No. 6:24-CV-1076-JSS-DCI, 2024 WL 5671535, at *4 (M.D. Fla. June 17, 2024). To be sure, Plaintiff has plenty of allegations about ADA retaliation when opposing the "Complained-of *Disability* Searches" outlined in the CBA, Dkt. 36 ¶ 19 (emphasis added), but there are zero allegations about which portions of the questionnaire violated GINA, to whom he made these GINA-related objections after his August 12, 2022, exam at Life Scan, or how those objections about a GINA violation led to his termination. The Court grants the City's motion to dismiss the GINA retaliation claim in Count IV.

## IV.    Counts V & VI—Title VII sex discrimination and retaliation claims

Next, the City seeks dismissal of Plaintiff's Title VII sex discrimination claim, alleging that he was subjected to disparate treatment after objecting to the City allowing some medical evaluations to be optional for females but mandatory for males. Dkt. 36 ¶¶ 195–197. The City argues the "Amended Complaint not only fails to establish that he was treated differently [from] a female, but rather candidly admits that he was not actually subject to any differing treatment. In that respect, Griffin specifically alleges that the City did not employ any female firefighters during the relevant time period." Dkt. 39 at 13. Plaintiff responds that the CBA expressly captures the disparate treatment of male employees. Dkt. 42 at 13.

Title VII prohibits employment discrimination based on race, color, national origin, religion, and sex. 42 U.S.C. § 2000e−2(a)(1). Where, as here, a plaintiff alleges Title VII discrimination based on disparate treatment, he must show intent to discriminate. *Joe's Stone Crab*, 220 F.3d at 1273. A plaintiff may "use direct evidence, circumstantial evidence, or both" to demonstrate disparate treatment discrimination in violation of Title VII. *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023). When relying on circumstantial evidence, a plaintiff can establish a prima facie case of discrimination by showing that: "(1) she belongs to a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified to perform the job in question, and (4) her employer treated similarly

20

situated employees outside her class more favorably." *Id.* (internal quotation marks omitted) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). The fourth requirement is met when the plaintiff presents "evidence of a comparator—someone who is similarly situated in all material respects." *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022) (citation modified). "A 'similarly situated' comparator typically will have engaged in the same basic conduct (or misconduct); be subject to the same employment policy, guideline, or rule; have the same supervisor(s); or share the plaintiff's employment or disciplinary history." *Jimenez v. U.S. Att'y Gen.*, 146 F.4th 972, 996 (11th Cir. 2025) (citing *Lewis v. City of Union City*, 918 F.3d 1213, 1227–28 (11th Cir. 2019) (en banc)).

Here, assuming Plaintiff has satisfied the other requirements, Plaintiff has once again failed to sufficiently identify a similarly situated individual of a different sex who was treated more favorably than Plaintiff. Indeed, the complaint does not "even try to draw a stick figure" of comparators because the fire department never employed a female firefighter during the relevant period. *Bartholomew v. Lowe's Home Ctrs., LLC*, No. 2:19-CV-695-FTM-38MRM, 2020 WL 321372, at *6 (M.D. Fla. Jan. 21, 2020); *see* Dkt. 36 ¶¶ 202–203. Put simply, Plaintiff literally cannot allege that the City had the intent to discriminate against him because there is not a single female employee who received preferential treatment based on her sex. Therefore, Count V cannot withstand dismissal. *See Arrington v. Alabama*

*Power Co.*, 769 F. App'x 741, 746 (11th Cir. 2019) (affirming dismissal for failure to plead a prima facie case of disparate treatment when plaintiff did not plead that a similarly situated employee outside of its protected class was treated less favorably); *Litman v. Sec'y, of the Navy*, 703 F. App'x 766, 769 (11th Cir. 2017) (affirming dismissal of a disparate treatment claim when plaintiff alleged nowhere that similarly situated employees were treated more favorably); *Arafat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x 872, 874 (11th Cir. 2013) (affirming dismissal for failure to plead the existence of similarly situated employees when plaintiff merely generically referenced younger males).

To be clear, the "*McDonnell Douglas*'s burden-shifting framework is an evidentiary standard, not a pleading requirement." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (citation omitted). However, Plaintiff still needs to "provide enough factual matter (taken as true) to suggest intentional [sex] discrimination" under Title VII. *Id.* (citation modified). The Amended Complaint cannot allege any intentional sex discrimination since there is not a single firefighter of a different sex who was treated more favorably than Plaintiff during his employment with the City. *See* Dkt. 36 ¶¶ 202–203. Thus, the Court dismisses the sex discrimination claim in Count V.[4]

---

[4] The Court notes that the Amended Complaint does not bring a disparate treatment claim based on a facially discriminatory policy. *See Lange v. Houston Cnty., Ga.*, 152 F.4th 1245, 1251 (11th Cir. 2025). Indeed, all of Plaintiff's allegations are about the City's intentional discrimination when it forced him to undergo certain medical procedures, while a hypothetical female firefighter could opt out of some procedures. *See* Dkt. 36 ¶¶ 198–205. These

As to Plaintiff's Title VII retaliation claim in Count VI, the Court also concludes it must be dismissed. As discussed above, a plaintiff has only engaged in protected activity if the plaintiff "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Furcron*, 843 F.3d at 1311 (quoting *Little*, 103 F.3d at 960). The plaintiff must show both that he subjectively believed his employer engaged in an unlawful practice, and that this belief "was *objectively* reasonable in light of the facts and record presented." *Little*, 103 F.3d at 960. The objective reasonableness of the belief is measured by reference to controlling substantive law. *Furcron*, 843 F.3d at 1311.

Here, Plaintiff's sex discrimination objections to the medical procedures cannot be objectively reasonable since there was not a single female firefighter who was getting treated more favorably than Plaintiff. Regardless of whether Plaintiff subjectively believed it was unlawful for him to undergo a genital exam while a hypothetical female employee could opt out, throughout his employment with the City, there was not a single instance of this discriminatory treatment happening. *See* Dkt. 36 ¶¶ 196–204. "Unfair treatment, absent discrimination based on . . . sex . . ., is *not* an unlawful employment practice under Title VII." *Jackson v. Sec'y, U.S. Dep't of Transp., Fed. Aviation Admin.*, No. 25-10894, 2026 WL 100401, at *3 (11th

---

allegedly discriminatory procedures also included ones not listed in Article 6 of the CBA. *See id.* ¶ 198. Conversely, a Title VII claim based on a facially discriminatory policy "does not depend on why the [defendant] discriminates but rather on the explicit terms of the discrimination." *Automobile Workers v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991).

Cir. Jan. 14, 2026) (quoting *Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995)). Therefore, the Court dismisses Plaintiff's Title VII retaliation claim in Count VI.

## V.    Count VII—Fourth Amendment Section 1983 Claim

The Amended Complaint now specifies that Plaintiff is bringing a 42 U.S.C. § 1983 claim against the City for violations of Plaintiff's Fourth Amendment right against unreasonable searches. Dkt. 36 ¶¶ 224–232. The City asserts the "Fourth Amendment claim should be dismissed as [Plaintiff] has not pled facts plausibly establishing that his privacy interests outweighed the City's interest[,] and because the collective bargaining agreement provided consent for the City to require the mandatory examinations." Dkt. 39 at 16.

Generally, municipalities—like the City—cannot be held liable on a theory of *respondeat superior* or for acts committed by their officers. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691, 693–94 (1978). Instead, municipal entities may be held liable under § 1983 only where "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. This standard requires a plaintiff to show "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

The Fourth Amendment to the United States Constitution affords protections against "unreasonable searches and seizures." U.S. Const. amend. IV. The United States Supreme Court has held that under the Fourth Amendment "a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One of the narrow exceptions the United States Supreme Court has developed is a search that "serves special governmental needs." *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 665 (1989); *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (noting a search made without individualized suspicion of wrongdoing can be reasonable "when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable" (citation modified)).

The Eleventh Circuit has explained that "[w]hen a special need is claimed, [the Court] [is] obliged to 'undertake a context-specific inquiry, examining closely the competing private and public interests advanced by the parties.'" *Friedenberg v. Sch. Bd. of Palm Beach Cnty.*, 911 F.3d 1084, 1091 (11th Cir. 2018) (quoting *Chandler v. Miller*, 520 U.S. 305, 314 (1997)). "And in limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a

requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion." *Id.* (citation modified) (quoting *Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 624 (1989)). The Eleventh Circuit has determined special needs exist where "government employees [are] engaged in safety-sensitive tasks." *Id.* at 1096 (citation modified).

Resolving a "special needs" issue is a twofold process. "Once a plaintiff has shown that the government conducted a search without individualized suspicion . . . the burden shifts to the government to establish that it has a 'special need' sufficient to warrant departure from the Fourth Amendment's baseline requirement of individualized suspicion." *Id.* at 1091. If a special need is presented, the Court "undertake[s] a context-specific inquiry, examining closely the competing private and public interests advanced by the parties to determine the reasonableness of the search." *Lebron v. Sec'y, Fla. Dep't of Children & Families*, 710 F.3d 1202, 1207 (11th Cir. 2013) (citation modified). "At this balancing stage, the ultimate burden of persuasion remains squarely on the plaintiff." *Friedenberg*, 911 F.3d at 1091–92 (citation modified).

Notably, the Eleventh Circuit has already suggested that the "special needs" exception can be naturally extended to firefighters. *See Am. Fed'n of State, Cnty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 869 (11th Cir. 2013) ("Another category—a natural extension of the Supreme Court's holding in *Von Raab*—

encompasses . . . firefighters." (citing *Hatley v. Dep't of the Navy,* 164 F.3d 602, 604 (Fed. Cir. 1998)); *cf. Cremeens v. City of Montgomery, Ala.*, 427 F. App'x 855, 858 (11th Cir. 2011) (noting in the ADA context that "[t]he physical fitness requirements are directly related to a Fire Investigator's duty to fight fires, and they are necessary to ensure that Fire Investigators are able to perform that function when called upon to do so").

However, the Eleventh Circuit has also been clear that "the special-needs balancing test [is] not at a high order of generality," but is "fact-intensive" and requires "due consideration to the characteristics of a particular job category (e.g., the degree of risk that mistakes on the job pose to public safety), the important privacy interests at stake, and other context-specific concerns (e.g., evidence of a preexisting drug problem)." *Scott*, 717 F.3d at 873. The *Scott* court went on to emphasize that "[j]ust as we know that some subset of state employees almost certainly can be tested due to specific, important safety concerns, we know that there are some employees who almost certainly cannot be tested without individualized suspicion. Again, the problem is that the factual record is almost barren, and the balancing calculus required by Supreme Court case law cannot be exercised in a vacuum." *Id.*

Here, the Court cannot undertake the "fact-intensive" special needs balancing test at the motion to dismiss judgment stage when the "factual record is almost

27

barren." *Id.* While there is a strong possibility the City may ultimately prevail in proving that an annual fitness for duty examination for a firefighter does not run afoul of the Fourth Amendment due to the special needs exception, the Court declines the City's request to conduct such a test at this preliminary stage. To resolve the instant motion to dismiss, the Amended Complaint sufficiently alleges that a search of Plaintiff's person was conducted without probable cause or reasonable suspicion, the City had an explicit policy under the CBA to annually perform such a search in deliberate indifference to Plaintiff's Fourth Amendment right, and the annual fitness for duty examination caused the alleged constitutional violation. *See* Dkt. 36 ¶¶ 16–19, 58, 224–232.

As to the City's alternative argument that Plaintiff had consented to the annual fitness for duty examination as a member of Local 747, which negotiated the CBA on behalf of all its members, the Court also declines to consider this argument at the motion to dismiss stage. The Eleventh Circuit has noted that "consent has already been adequately incorporated into the special-needs balancing test, which obliges us to evaluate whether an employee's choice of profession necessarily diminishes her expectation of privacy." *Scott*, 717 F.3d at 874. As such, if the Court does the special needs balancing test at a later stage of the proceeding on a complete factual record, Plaintiff's consent—as a member of Local 747 subject to the CBA—will be "a factor militating in favor of [the annual fitness for duty examination]." *Id.*; *see* Dkt. 36 ¶ 8

("At all times relevant to this lawsuit, Plaintiff was a member of St. Petersburg Fire Fighters Union, Local 747 . . . and covered by the bargaining unit, and subject to the lawful provisions of Local 747's Collective Bargaining Agreement with the City of South Pasadena."). The Court denies the City's motion to dismiss Count VII at this time.

## VI.    Count VIII—Fourteenth Amendment Section 1983 Claim

Finally, the Court considers Plaintiff's procedural due process claim under Section 1983. The City contends that Plaintiff has "received all process that was due to him," and "he has not alleged that adequate state remedies were unavailable." Dkt. 39 at 19. The Court agrees and grants the motion to dismiss Count VIII.

"An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (citation modified).[5] Plaintiff alleges procedural due process claims on both his property interest in his employment and his liberty interest in his reputation.[6] Dkt. 36 ¶¶ 237, 250.

---

[5] The City assumes *arguendo* that Plaintiff possessed a property right in his continued employment. Dkt. 39 at 19. For purposes of resolving this motion to dismiss, the Court does the same.

[6] Again, assuming *arguendo* that Plaintiff had a protected liberty interest in this case, "the only process due Plaintiff to protect his liberty interest was a 'name clearing hearing.'" *Harrison v. Wille*, 132 F.3d 679, 683 n.9 (11th Cir. 1998) (quoting *Warren v. Crawford,* 927 F.2d 559, 565 (11th Cir. 1991)). Because a name clearing hearing is "not as strict as the process required before one can be deprived of a property interest, due process [can be] satisfied by the same . . . notice and hearing" procedures when depriving someone of a property interest. *Id.* Moreover, the Eleventh Circuit has also noted that there is no difference between the two types of procedural due process claims. *Cotton v. Jackson*, 216 F.3d 1328, 1331 n.1 (11th Cir. 2000) ("We see no reason for distinguishing between the two kinds of procedural due process claims.").

"In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Arrington v. Helms*, 438 F.3d 1336, 1347–48 (11th Cir. 2006) (quoting *Grayden v. Rhodes,* 345 F.3d 1225, 1232 (11th Cir. 2003)). In the public employee termination context, notice is "sufficient if it notifies the public employee of the charges against him and is timely." *Lowery v. Strength*, 356 F. App'x 332, 334–35 (11th Cir. 2009) (citing *Harrison v. Wille*, 132 F.3d 679, 684 (11th Cir. 1998)). As such, "a full evidentiary hearing is not required," and the pre-termination hearing does not "have to establish conclusively the propriety of the termination." *Harrison*, 132 F.3d at 684. Instead, the plaintiff "need only be given an opportunity to present his side of the story." *Id.* If the local procedure is inadequate, the court should consider "whether the available state procedures were adequate to correct the alleged procedural deficiencies." *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000) (citing *McKinney v. Pate,* 20 F.3d 1550, 1563 (11th Cir. 1994)).

Here, Plaintiff failed to establish the third requirement of a Section 1983 procedural-due-process claim: constitutionally inadequate process. Accepting the allegations in the Amended Complaint as true, Plaintiff received all the process due during the second adverse employment action that led to his termination. During Plaintiff's second adverse employment action, he alleges that on August 26, 2022,

30

Fire Chief Mixson provided Plaintiff with a Notice of Formal Investigation with the alleged violations, Dkt. 36 ¶ 59; Plaintiff participated in the formal investigation, "provided testimony[,] and answered questions," *id.* ¶ 61; Fire Chief Mixson provided a Notice of Discipline with a memorandum explaining his reasoning for Plaintiff's termination, *id.* ¶¶ 62–71, 82; Plaintiff appealed his termination to Commissioner Reid, *id.* ¶ 86; and during the appeal, Plaintiff was permitted to provide objections, case law, and scholarly articles. *Id.* ¶¶ 86, 89. In sum, Plaintiff was not only informed of the termination hearing and allowed to testify on his own behalf, but was also permitted to appeal his termination and (again) present evidence on his behalf. The Fourteenth Amendment procedural due process clause requires nothing more. *See Loudermill,* 470 U.S. at 542; *Harrison*, 132 F.3d at 684 ("Affording an employee the opportunity to respond after being confronted with the charges is all that pretermination due process requires of the employer." (citation modified)). Plaintiff, however, argues that he was never given an "adversarial proceeding" where he could "cross-examine witnesses against him." Dkt. 42 at 26. As mentioned above, "a full evidentiary hearing is not required" before termination. *Harrison*, 132 F.3d at 684 (quoting *Loudermill,* 470 U.S. at 545). "Nor does the pretermination hearing have to establish conclusively the propriety of the termination." *Id.* The Amended Complaint plainly alleges that Plaintiff had been

given two opportunities to present his side of the story—at both the pretermination hearing with Fire Chief Mixon and at his appeal with Commissioner Heid.

Even if Plaintiff had alleged a viable procedural defect in the termination process, there are zero allegations showing that "the state refuse[d] to provide a process sufficient to remedy the procedural deprivation." *Cotton*, 216 F.3d at 1330 (quoting *McKinney,* 20 F.3d at 1557). To be sure, there is an allegation that the City refused to participate in the CBA's grievance process, Dkt. 36 ¶ 94, but there are no allegations that the State failed or refused "to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest." *Cotton*, 216 F.3d at 1331 (noting "[t]his rule . . . recognizes that the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora—agencies, review boards, and state courts before being subjected to a claim alleging a procedural due process violation" (citation modified)). The Eleventh Circuit has already found that "Florida courts indeed do have the power to review employment termination cases," and "[i]nherent in that power to review is the power to remedy deficiencies and to cure violations of due process." *McKinney,* 20 F.3d at 1563. The Amended Complaint, however, is totally silent on whether Plaintiff pursued his claim in the Florida courts. Therefore, because Plaintiff has failed to state a claim for a procedural due process violation, the Court finds that Count VIII is due to be dismissed.

## CONCLUSION

To the extent Plaintiff argues he should be granted leave to file a third complaint, Dkt. 42 at 29, the Court need not grant a plaintiff leave to amend his complaint when further amendment would be futile. *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019). Leave to amend is futile when the complaint, as amended, would still be dismissed. *Id.* Because Plaintiff has repeatedly failed to resolve the deficiencies identified in this Order and the previous dismissal order, the Court concludes that another attempt to amend his GINA, Title VII, and Section 1983 claims would be futile. *See L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020) ("Although a district court 'should freely give leave [to amend] when justice so requires,' Fed. R. Civ. P. 15(a)(2), it may deny leave, *sua sponte* or on motion, if amendment would be futile.").

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendant City of South Pasadena's Motion to Dismiss the Amended Complaint, Dkt. 39, is **GRANTED in part and DENIED in part**.

   a. Counts III, IV, V, VI, VIII are **DISMISSED without leave to amend**.[7]

   b. The City's motion to dismiss is **DENIED** as to Counts I, II, and VII.

---

[7] As discussed above, to the extent Count I alleges a so-called "confidentiality violation" claim under the ADA, this claim is also dismissed as time-barred.

33

2. Defendant City of South Pasadena must file a responsive pleading to the remaining counts in the Amended Complaint within **FOURTEEN (14) days** from the date of this Order.

**DONE AND ORDERED** at Tampa, Florida, on April 24, 2026.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record